INTERSTATE B. & L. ASSN. v. POWELL.

1. USURY.—THE ACT OF 1898, 22 Stat., 747, relating to construction of contracts secured by mortgage of real estate, does not apply to contracts executed before its enactment. *Tobin* v. *McNab,* 53 S. C., 73, *followed.*

2. IBID.—B. & L. ASSN.—A CONTRACT upon which eight per cent. only is charged, payer being given credit for all payments on dues, interest, and premiums, is not usurious.

3. IBID.—FORECLOSURE.—Order requiring deferred payments in foreclosure sale to draw interest at. eight per cent., is not violative of the usury law.

4. INTEREST.—ATTORNEY'S FEE provided for in bond should not draw interest before put in judgment.

Before GARY, J., Richland, January, 1899.     Affirmed.

Foreclosure by Interstate Building and Loan Association of Atlanta, Ga., against Fannie C. Powell. From decree in foreclosure, defendant appeals.

*Mr. John J. McMahan,* for appellant, cites: *Error to hold that contract was to be performed in Ga.:* 22 Ia., 194; 20 S. E. R., 457; 18 S. E. R., 131; 84 Ga., 481; 112 N. C., 842. *Attorney's fee should not have been included in interest-bearing fund:* 48 Ia., 52; 6 Neb., 56. *Credit portion should not be required to draw eight per cent. interest:* Rev. Stat., 1392.

*Messrs. Moore & Thompson,* contra, cite: *Contract is governed by the laws of Ga., and not usurious:* 53 S. C., 73. *Clause in bond providing that on final settlement no greater interest than eight per cent. shall be charged, saves it from usury:* 47 S. C., 404.

June 3, 1899. The opinion of the Court was delivered by MR. JUSTICE GARY. The master, to whom this case was referred, made the following report upon the facts: 1. That the Interstate Building and Loan Association of Atlanta is

a corporation existing under the laws of the State of Georgia. 2. That said corporation has paid a license to the State of South Carolina to do business in said State, and had a local board or branch of the said association in the city of Columbia, in the county and State aforesaid, and that J. S. Coles, jr., was the secretary and treasurer of said local board, and acted as the soliciting agent of the said association. 3. That Fannie C. Powell, through the agent of the local board, applied to the said Interstate Building and Loan Association of Atlanta for a loan of $2,000, which said loan was granted, and the money paid over to her by the local secretary. 4. That on the 2d day of May, 1895, at Columbia, S. C., Fannie C. Powell executed and delivered to the said Interstate Building and Loan Association of Atlanta, her bond in the penal sum of $4,000, on twenty shares of stock assigned to the said association as collateral; the condition of the said bond being that the said Fannie C. Powell, her heirs, etc., do pay to the association, as provided in its by-laws, rules and regulations, "the sum of $32 monthly (of which $12 is for instalments due on said twenty shares of stock, and the sum of $10 is for interest on the sum actually advanced, and the further sum of $10 is for premium on the sum actually advanced)." 5. That on the said 2d day of May, 1895, for the securing of the bond referred to in paragraph 4 of this report, at Columbia, in the State of South Carolina, Fannie C. Powell executed and delivered to the said Interstate Building and Loan Association of Atlanta, her mortgage of that tract of land described in the complaint. 6. That under the terms of the application for loan, the bond and mortgage, the certificate of stock, and the constitution and by-laws of the said Interstate Building and Loan Association of Atlanta, the contract was to be performed in the State of Georgia; and I, therefore, hold that the contract is governed by the laws of that State, and not by the laws of South Carolina, in which State the loan was made and the bond and mortgage executed. 7. That the condition of the

said bond and mortgage has been broken, and that there is now due thereon (up to the date of this report) the sum of $2,816.95, as per the following statement: Amount of loan, $2,000; 43 instalments, at $12, $516; 42 payments of interest, at $10, $420; 42 payments of premium, at $10, $420; 31 fines, at $2, $62; insurance, $20—$3,438. Credit, amount paid in, $364; credit, withdrawal value, $504—$868; attorney's fee, $246.99—$2,816.99. It was admitted that the contract is not usurious, if the law of Georgia controlled. The certificate of stock provides: "This certificate is issued to and accepted by the holder upon the express terms and conditions as printed on the back thereof." On the back of the certificate of stock is printed: "This certificate is issued to and accepted by the holder upon the following express terms and conditions: 1st. The shareholder agrees to pay to the association sixty cents monthly for each share until such share matures or is withdrawn. 2. All monthly instalments are due on the first day of each month, and must be paid *on or before the fifth day of each month, beginning with the month following the date of this certificate. No notice of such monthly payments shall be required by or sent to members.* All moneys due from the shareholder to the association are due and payable at the office in Atlanta, Ga., and to its secretary: Provided, however, That payments may be made to a local treasurer in any town where not less than 100 shares are held; but in such cases the local treasurer will be deemed the agent of the local shareholder and not of the association, and payments will be credited to shareholders only after receipt at the home office." Extract from by-laws.—"1. The name of this association shall be 'Interstate Building and Loan Association of Atlanta,' and its principal office and place of business shall be in the city of Atlanta." "20. All members desiring loans may apply for the same after making two monthly payments, exclusive of the admission fee. The rate of interest shall be six per cent. per annum, payable monthly, and the rate of premium fifty cents per share, payable monthly."

"21. All applications for loans must be in writing, and be submitted to the board of directors of the parent office." "22. No loan will be made in any city or town unless an office of the association is established there, and at least 100 shares of stock shall have been taken and paid upon, and a committee of at least five stockholding trustees be appointed by the proper authorities at the parent office, whose duties will include the appraising of property submitted as security." "24. Loans may be repaid at any time on giving thirty days notice. A borrower who pays his loan before maturity may withdraw his stock, or continue it as an investment. In repaying his loan the borrower must, in addition to paying the full amount of the loan, forfeit the premium and interest on said loan." "55. Members may, if they desire, make their monthly payments to the treasurer of the local board; but such local treasurer is the agent of the member thus making his payment, and not of the association."

Exceptions were taken to the master's report. The first two are repeated verbatim in the first two exceptions hereinafter made to the decree of the presiding Judge. The remaining exception was: "3. Because the master held that the amount due upon said bond and mortgage is $2,816.99; whereas he should have held that the amount due is $1,627.25."

The Judge decreed in part as follows: "1. That the report of the said master be, and the same hereby is, in all things confirmed, except as to the amount found to be due on the bond and mortgage described in the pleadings. 2. That, under the clause in the said bond providing that upon final settlement the plaintiff association, as instalments on stock and interest, shall retain no greater sum than the sum actually advanced, with interest thereon at the rate of eight per cent. per annum, there is now due and payable to the plaintiff on the said bond and mortgage, including a ten per cent. attorney's fee, the sum of $2,549.07, with interest since the 17th day of January, 1899, instead of the sum of $2,816.95, as reported due by the master. 3. That the plaintiff do re-

cover of the defendant the sum of $2,549.07, with interest thereon since January 17th, 1899, together with the costs and disbursements of this action, to be taxed by the clerk of the court. 4. That on default of payment thereof, on or before the 1st day of February, 1899, the mortgaged premises hereinafter described be sold by the master of Richland County at public auction, before the court house door in the city of Columbia, county and State aforesaid, on the first Monday in March next, or on some subsequent and convenient salesday thereafter, on the following terms, to wit: one-third cash, and the balance in two equal annual instalments, with interest from the day of said sale at the rate of eight per cent. per annum, payable annually until the whole principal and interest be fully paid, secured by the bond of the purchaser and the mortgage of the premises sold, the buildings to be insured by the purchaser and the policy assigned, and the mortgage to contain clause providing for attorney's fees, with the privilege to the purchaser of paying all cash."

The defendant appealed upon exceptions, the first and second of which are as follows: "1. Because his Honor erred in confirming the master's report, wherein the latter found as matter of fact, 'that under the terms of the application for loan, the bond and mortgage, the certificate of stock, and the constitution and by-laws of the said Interstate Building and Loan Association of Atlanta, the contract was to be performed in the State of Georgia.' Whereas he should have found that the contract upon which the loan was made and the bond and mortgage were executed, was to be performed in the State of South Carolina. 2. Because his Honor erred in confirming the master's report, wherein the latter held, 'that the contract is governed by the laws of that State (Georgia) and not by the laws of South Carolina, in which State the loan was made and the bond and mortgage executed.' Whereas he should have held that the contract is governed by the laws of the State of South Carolina, and is usurious." By comparing this case with that of *Tobin* v. *McNab,* 53 S. C., 73, it will

be seen that the two cases are not materially different in the facts relative to the question presented by these exceptions, and that this case is governed by the principles therein stated.    As this question has been decided in previous cases, it is unnecessary to enter into an extended discussion of it, especially as it cannot arise in contracts prior to the act of 1898, 22 Stat., 747, which provides that "All contracts secured by mortgage of real estate, situate in this State, shall be subject to and construed by the laws of this State, regulating the rate of interest allowed and in all other respects, without regard to the place named for the performance of the same."    There is another reason why these exceptions should not be sustained.    The Circuit Judge allowed the defendant credits for the payments which she made, and has only allowed the plaintiff interest on the amount of the loan at the rate of eight per cent. per annum, which even under the laws of this State is not usurious.    *Thompson* v. *Gillison*, 28 S. C., 534.

The third exception is as follows: "3.    Because his Honor erred in holding, 'there is now due and payable to the plaintiff on the said bond and mortgage, including a ten per cent. attorney's fee, the sum of $2,549.07, with intrest since the 17th day of January, 1899.'    Whereas he should have held the amount due to be $1,627.25."    This exception is predicated upon the fact that the contract was usurious, but we have shown that such is not the case.    This exception is, therefore, overruled.

The fourth exception is as follows: "4.    Because his Honor erred in requiring that the credit portion of the purchase money should bear interest at the rate of eight per cent. per annum."    Sec. 1390 of the Rev. Stat. is as follows: "No greater rate of interest than seven per cent. per annum shall be charged, taken, agreed upon, or allowed upon any contract arising in this State, for the hiring, lending, or use of money, or other commodity, except upon written contracts, wherein by express agreement a rate of interest not exceeding eight per cent. may be charged

21—55

* * *" Whoever becomes the purchaser of the property and complies with the terms of sale will undoubtedly enter into a written contract, and the agreement to pay eight per cent. will in no .respect be violative of the law against usury. This exception is overruled.

The fifth exception is as follows: "5. Because his Honor erred in including the attorney's fee in the sum which he decreed should bear interest. Whereas he should have provided for interest at the rate of seven per cent."

4   It seems to us that this exception must have been taken under a misapprehension, as we have not been able to find where the presiding Judge allowed any interest whatever upon the amount due as attorney's fee before that amount became a part of the judgment, or where, after that time, he allowed interest at a 'greater rate than seven per cent. If, however, when this case is remanded to the Circuit Court, the appellant can satisfy that Court that the facts are otherwise, he should have relief in this respect.

It is the judgment of this Court, that the judgment of the Circuit Court as herein construed be affirmed.